J-A20022-21
J-A20023-21

2022 PA Super 8

BRIAN W. JONES, ASSIGNEE OF          :     IN THE SUPERIOR COURT OF
WILSON C. FOX                        :          PENNSYLVANIA
                                     :
                                     :
            Appellant                :
                                     :
                                     :
                                     :
                                     :
       v.                            :
                                     :
                                     :     No. 269 WDA 2021
                                     :
JANICE MCGREEVY,                     :
ADMINISTRATRIX OF THE ESTATE OF      :
DANIEL MCGREEVY, JANICE              :
MCGREEVY, SNOWDEN CAPITAL            :
ADVISORS LLC, ALSO KNOWN AS          :
SNOWDEN LANE PARTNERS,               :
PERSHING LLC, BANK OF NEW YORK       :
MELLON NA, ALSO KNOWN AS BNY         :
MELLON                               :

Appeal from the Judgment Entered February 4, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-09-016053


BRIAN W. JONES                       :     IN THE SUPERIOR COURT OF
                                     :          PENNSYLVANIA
            Appellant                :
                                     :
                                     :
                                     :
       v.                            :
                                     :
                                     :
                                     :
JANICE MCGREEVY,                     :     No. 286 WDA 2021
ADMINISTRATRIX OF THE ESTATE         :
OF DANIEL M. MCGREEVY, JANICE        :
MCGREEVY, LAUREN ROSE                :
MCGREEVY-GRUSZKA, BRENT              :
GRUSZKA, BRENDAN MCGREEVY,           :
JANICE MCGREEVY,                     :
ADMINISTRATRIX OF THE ESTATE         :
OF DANIEL M. MCGREEVY, AS            :

J-A20022-21
J-A20023-21

TRUSTEE FOR THE DANIEL M.          :
MCGREEVY SEPARATE SHARE           :
TRUST, AND ALL OTHER              :
IMMEDIATE AND MEDIATE
TRANSFEREES

Appeal from the Order Entered February 18, 2021
In the Court of Common Pleas of Warren County Civil Division at
No(s):  A.D. 454 of 2020

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

OPINION BY BENDER, P.J.E.:                    **FILED:  January 11, 2022**

Brian W. Jones ("Appellant"), assignee of Wilson C. Fox ("Fox"), appeals from the February 4, 2021 judgment entered at docket no. 269 WDA 2021 after a non-jury verdict in favor of the debtor, Daniel M. McGreevy ("McGreevy"), and the garnishees, Snowden Capital Advisors LLC, a/k/a Snowden Lane Partners ("Snowden"), Pershing LLC ("Pershing"), and Bank of New York Mellon NA, a/k/a BNY Mellon ("BNY Mellon") (collectively "Garnishees").  In addition, Appellant appeals from the February 18, 2021 order entered at docket no. 286 WDA 2021, which sustained the preliminary objections filed by the defendant, McGreevy, and the transferees, Janice McGreevy, Lauren Rose McGreevy-Gruszka, Brent Gruszka, Brendan McGreevy, the Daniel McGreevy Separate Share Trust, and all other immediate and mediate transferees (collectively "Transferees"), and dismissed Appellant's complaint.[1]  After careful review, we vacate the

_____

[1] As the appeals at nos. 269 WDA 2021 and 286 WDA 2021 involve the same parties and the issues raised therein are closely related, we consolidate the appeals *sua sponte* for ease of disposition.

- 2 -

judgment entered at docket no. 269 WDA 2021, vacate the February 18, 2021 order entered at docket no. 286 WDA 2021, and remand these cases for further proceedings consistent with this opinion.

We glean the following relevant facts and procedural background of these matters from the record. On December 16, 2008, Fox commenced a civil action against McGreevy in the Westmoreland County Court of Common Pleas at docket no. 14497 of 2008, after McGreevy defaulted on an agreement to purchase two collectible shotguns from him for $40,000.00. On July 10, 2009, Fox obtained a default judgment against McGreevy in the amount of $50,800.00. On September 17, 2009, the judgment was transferred to the Allegheny County Court of Common Pleas at docket no. GD-09-016053 ("Garnishment Action"). Fox subsequently sold and assigned the judgment to Appellant.

On August 2, 2018, Appellant began post-judgment enforcement proceedings via the Garnishment Action, by requesting the issuance of a writ of execution and naming PNC Bank as the garnishee.[2] That action resulted in the garnishing of funds from McGreevy's individual checking and savings

---

[2] "Garnishment is a proceeding through which a creditor collects his debt out of property of the debtor in the hands of a third party…." **Garden State Standardbred Sales Co., Inc. v. Seese**, 611 A.2d 1239, 1241 (Pa. Super. 1992) (internal quotation marks and citation omitted). Service of a writ of execution on a garnishee "attaches all property of the defendant in the possession of the garnishee, including property that comes into the garnishee's possession after service." **Korman Commercial Properties, Inc. v. Furniture.com, LLC**, 81 A.3d 97, 100 (Pa. Super. 2013) (citing Pa.R.C.P. 3111(b)).

accounts with PNC Bank in the amount of $4,945.17, which was paid towards the balance owed to Appellant on the judgment.

On January 23, 2019, Appellant requested a writ of execution be reissued and served on BNY Mellon, as garnishee.[3]  The sheriff personally served BNY Mellon with the writ of execution, along with interrogatories in attachment on January 24, 2019.  BNY Mellon never filed an answer to the interrogatories.  On February 27, 2019, Appellant filed a praecipe to reissue a writ of execution, naming Snowden and Pershing as garnishees.[4]  Appellant subsequently served Pershing with the writ of execution, along with

_____

[3] BNY Mellon is a wholly owned subsidiary of Bank of New York Mellon Corporation, which provides check services for customers such as McGreevy who maintain BNY Pershing Corestone accounts.  **See** Appellant's Brief ("Appellant's Brief I"), 5/19/21, at 7.

[4] Snowden and Pershing, also subsidiaries of Bank of New York Mellon Corporation, maintained control of the following accounts owned by McGreevy at the time the writ was reissued: (1) individual brokerage/checking account; (2) separate share trust; (3) individual retirement account ("IRA"); (4) inherited/decedent IRA; and (5) joint brokerage/checking account.  N.T. Deposition of Robert Feldman, 6/11/19, at 8-11.  Snowden is an independent brokerage dealer and registered investment advisory firm which managed McGreevy's investments, while Pershing was the custodian of the assets in McGreevy's accounts.  **Id.**; N.T. Trial, 3/2/20, at 18-19.  Robert Feldman is the Senior Partner and Managing Director of the Feldman Group at Snowden's Pittsburgh office.  As an employee and agent of Snowden, Mr. Feldman provided investment advice and brokerage services for McGreevy for more than ten years prior to McGreevy's death.  **See id.** at 9-10; Affidavit of Robert Feldman, 3/5/19, at 1-2 (unnumbered).

interrogatories in aid of execution,[5] on March 1, 2019, via certified mail at its corporate office located in New Jersey, as agreed upon by Pershing.[6] On April 1, 2019, Pershing filed its answers to the interrogatories, in which it indicated that it had frozen the funds in McGreevy's individual brokerage/checking account, totaling $102,549.08, and that it elected not to freeze the assets in McGreevy's other accounts, because there were enough funds in his individual checking account to pay the balance owed on the judgment.

In February and March of 2019, McGreevy filed claims for exemption and immunity of his assets in Garnishees' custody from levy or attachment, pursuant to Pa.R.C.P. 3123.1(a).[7] Additionally, in April of 2019, McGreevy filed preliminary objections to the writ of execution served on Pershing, in which he asserted that his property held in Pershing's custody was exempt or immune from execution.[8] On September 25, 2019, McGreevy's wife, Janice McGreevy ("Wife"), joined the Garnishment Action as an interested party and

_____

[5] In the context of an attachment proceeding, interrogatories are analogous to a complaint and are designed to ascertain the property in the possession of a garnishee. **See Painwebber, Inc. v. Devin**, 658 A.2d 409, 412 (Pa. Super. 1995) (citing Pa.R.C.P. 3144, 3145).

[6] Service of the writ was never obtained on Snowden.

[7] Rule 3123.1(a) provides, in relevant part: "A defendant may claim exemption or immunity of property from levy or attachment by filing with the sheriff a claim substantially in the form provided by Rule 3252(a)." Pa.R.C.P. 3123.1(a).

[8] Rule 3142 allows a defendant or garnishee to raise the defenses of immunity or exemption of property from attachment in the form of preliminary objections. **See** Pa.R.C.P. 3142(a).

adopted McGreevy's preliminary objections. On September 29, 2019, the trial court stayed the preliminary objections and declared that the issue of whether McGreevy's assets in Pershing's custody are exempt or immune from execution would be decided at a non-jury trial.

Senior Judge Paul F. Lutty, Jr., presided over the non-jury trial held on March 3, 2020. At the close of trial, Judge Lutty directed McGreevy and Appellant to submit proposed findings of fact and conclusions of law. Both parties complied. On June 23, 2020, Judge Lutty entered the following order:

> AND NOW, this 23rd day of June 2020, it is hereby ORDERED, ADJUDGED AND DECREED that verdict is entered in favor of … McGreevy and against … Appellant…. The writs of execution issued against … Garnishees on January 23, 2019 and February 27, 2019 are dismissed and dissolved, and all property owned and held by [McGreevy], or established for the benefit of [McGreevy] or otherwise associated with [McGreevy], including all accounts in the custody of Pershing … is hereby ordered, adjudged and decreed to be immune and exempt from attachment, levy and execution. Pershing … is hereby ordered and directed to release any and all holds and/or freezes on the accounts of … McGreevy on deposit and within the custody of Pershing….

Trial Court Order ("Order"), 6/23/20, at 1-2 (unnumbered; some capitalization omitted).[9] *See* Pa.R.C.P. 3121(a)(4) (requiring the court to set aside a writ of execution upon the showing of exemption or immunity of property from execution). No findings of fact were issued by the trial court, nor was the Non-Jury Verdict accompanied by a memorandum explaining Judge Lutty's decision.

_____

[9] On the same date, Judge Lutty amended the Order solely for the purpose of renaming it "Non-Jury and Amended Verdict," which we refer to herein as Non-Jury Verdict. *See* Non-Jury Verdict, 6/23/20, at 1-2 (unnumbered).

On June 29, 2020, Appellant filed a motion for post-trial relief. Oral argument was held on the post-trial motion on September 24, 2020, and continued on October 15, 2020. Both parties subsequently submitted briefs at the trial court's request. On February 4, 2021, Appellant filed a praecipe for entry of judgment on the Non-Jury Verdict pursuant to Pa.R.C.P. 227.4(1)(b), as more than 120 days had passed since the filing of his request for post-trial relief and the trial court had not yet disposed of the motion. Judgment was entered on the same date. On February 8, 2021, Appellant filed a timely notice of appeal at docket no. 269 WDA 2021, followed by the filing of a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

McGreevy died on January 17, 2021, just prior to the filing of the appeal in the Garnishment Action. Wife was appointed as administratrix of his estate ("Administratrix") in February of 2021 and, on March 23, 2021, McGreevy's counsel filed a notice of McGreevy's death, along with a request to substitute Administratrix for the deceased as the defendant in the Garnishment Action, in compliance with Rules 2355 and 2352. **See** Pa.R.C.P. 2355(a) ("If a named party dies after the commencement of an action, the attorney of record for the deceased party shall file a notice of death with the prothonotary. The procedure to substitute the personal representative of the deceased party shall be in accordance with Rule 2352."); Pa.R.C.P. 2352 (directing the filing

of a statement of material facts on which the right to substitution of a party is based). The prothonotary adjusted the caption accordingly.[10]

While the Garnishment Action was still pending, Appellant instituted a separate action on October 9, 2020, in the Warren County Court of Common Pleas at docket no. A.D. 454 of 2020, with the filing of a complaint against McGreevy, in which he alleged that McGreevy attempted to harbor transferred and subsequently acquired assets and/or funds from the reach of creditors, in violation of the Pennsylvania Uniform Voidable Transactions Act ("PUVTA"), 12 Pa.C.S. §§ 5101-5114.[11] On November 9, 2020, PUVTA Appellees filed preliminary objections to the complaint, asserting, *inter alia*, that the trial court lacked subject matter jurisdiction as a result of the Non-Jury Verdict entered in the Garnishment Action, in which Judge Lutty declared all of McGreevy's assets exempt and immune from attachment, levy, and execution. In response, Appellant filed preliminary objections to PUVTA Appellees' preliminary objections. On February 17, 2021, following argument on the preliminary objections, the trial court entered an order sustaining PUVTA Appellees' first objection regarding the court's lack of subject matter

---

[10] Administratrix and Garnishees, the appellees in this matter, are referred to collectively herein as "Garnishment Appellees."

[11] We refer to this action herein as the "PUVTA Action." With regard to the PUVTA Action, McGreevy and Transferees are referred to collectively herein as "PUVTA Appellees."

jurisdiction, which rendered their remaining objections moot, and dismissing the complaint without prejudice.

On February 23, 2021, Appellant filed a timely, *pro se* notice of appeal at docket no. 286 WDA 2021. The trial court directed Appellant to file a Rule 1925(b) concise statement of errors complained of on appeal. Appellant timely complied.[12]

_____

[12] On April 29, 2021, this Court issued an order directing Appellant to show cause why this appeal should not be dismissed, as an appeal filed from an order sustaining a preliminary objection and dismissing the appellant's complaint without prejudice is generally interlocutory and unappealable. *Per Curiam* Order, 4/29/21 (single page) (citing *Mier v. Stewart*, 683 A.2d 930, 930 (Pa. Super. 1996) (stating that an order dismissing a complaint without prejudice for the plaintiff to file an amended complaint is not a final order); *Levitt v. Patrick*, 976 A.2d 581, 588 (Pa. Super. 2009) (noting the key inquiry in determination of finality of a judgment is whether there is any outstanding claim; if any claim remains outstanding then the order is generally not appealable subject to exceptions); Pa.R.A.P. 341(b)(1) (providing that a final order is any order that disposes of all claims and of all parties)). Appellant filed a timely response, in which he explained that the trial judge predicated Appellant's ability to refile his PUVTA complaint on the reversal of the Non-Jury Verdict pending appeal in the Garnishment Action. Appellant's Response to Rule to Show Cause, 4/30/21, at 1. Moreover, Appellant argues that the PUVTA contains a four-year "look back" period which was not tolled by the dismissal of his complaint and that the trial judge did not grant him leave to refile or amend the complaint within a time certain. *Id.* at 1-2. Appellant concludes that he was effectively placed out of court and that there are no outstanding claims before the trial court in the PUVTA Action. *Id.* at 2-3. *See also id.* at 2 (citing *Fastuca v. L.W. Molnar & Associates*, 950 A.2d 980, 986 (Pa. Super. 2008) ("[T]o determine whether finality is achieved, we must consider whether the practical ramification of the order will be to dispose of the case, making review appropriate.") (citation omitted); *West v. West*, 446 A.2d 1342, 1342 (Pa. Super. 1982) ("The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. If the practical effect of an order is to put an appellant out of court by precluding him from presenting the merits of his claim, the order is

*(Footnote Continued Next Page)*

On July 2, 2021, Garnishment Appellees filed an application to dismiss the appeal at docket no. 269 WDA 2021 as moot. We denied their application. *Per Curiam* Order, 8/27/21 (single page).[13]

_____

appealable.") (internal quotation marks and citations omitted)). Accordingly, we discharged the rule to show cause and allowed the appeal to proceed. **See** *Per Curiam* Order, 5/7/21 (single page).

[13] Garnishment Appellees requested dismissal of this appeal pursuant to the mootness doctrine, as they argued that the issues raised by Appellant became moot during the pendency of the appeal. Application to Dismiss, 7/2/21, at 5-9 (unnumbered) (citing **Deutsche Bank Nat'l Co. v. Butler**, 868 A.2d 574, 577 (Pa. Super. 2005) ("[A]n actual claim or controversy must be present at all stages of the judicial process for the case to be actionable or reviewable[.]"); **In re Duran**, 769 A.2d 497, 502 (Pa. Super. 2001) ("If events occur to eliminate the claim or controversy at any stage in the process, the case becomes moot.")). Instantly, Appellant seeks a reversal of the Non-Jury Verdict declaring McGreevy's assets exempt and immune from execution by a judgment creditor and a remand with instructions to reinstate his writs of execution. Garnishment Appellees argued that such an order by this Court would have no legal force or effect, as the subject accounts in Pershing's custody are now closed and no longer exist. **Id.** at 9. They explained that, on July 15, 2020, subsequent to the entry of the Non-Jury Verdict dissolving the writs of execution and releasing the hold on the funds in McGreevy's checking account, McGreevy transferred the balance of his individual checking account to the joint checking account he held with Wife. McGreevy and Wife then transferred the funds from their joint account to their son, Brendan McGreevy, as a gift. **Id.** at 6-7. Additionally, after McGreevy's death, Wife exercised her option as the beneficiary of the inherited/decedent IRA to roll over the funds into a new IRA created for her benefit. **Id.** at 7. Finally, upon McGreevy's death, McGreevy's brother, Shawn McGreevy, became the successor trustee of the separate share trust. On February 16, 2021, the assets of the separate share trust were divided and distributed to the late McGreevy's three adult children, pursuant to the trust agreement. **Id.** at 8. Thus, Garnishment Appellees asserted that any opinion and order issued by this Court as to the immunity and/or exemption of McGreevy's former assets would be purely advisory in nature. **Id.** at 9 (citing **Erie Ins. Exchange v.**
*(Footnote Continued Next Page)*

**Appeal from Garnishment Action**

_____

***Claypoole***, 673 A.2d 348, 352 (Pa. Super. 1996) ("It is impermissible for courts to render purely advisory opinions.")).

In response, Appellant argued that the issues it raised on appeal are certainly not moot, as a reversal of the Non-Jury Verdict would allow Appellant to pursue his fraudulent claim action in Warren County. Answer to Application to Dismiss, 7/9/21, at 4-5 (unnumbered) (noting that, "according to the trial court in Warren County, because of Judge Lutty's order, Appellant could never sufficiently plead the existence of any assets that could be fraudulently transferred[,]" rendering his PUVTA claim null and void absent a reversal). Moreover, Appellant filed a claim against McGreevy's estate on February 17, 2021. ***Id.*** at 5. Administratrix filed an objection to his claim, stating "all property of the decedent … was property by the entireties … and was judicially determined during his lifetime to be immune and exempt from attachment and execution by creditors…. [T]he judgment upon which the alleged claim is based is void under Pennsylvania law." ***Id.*** Thus, Appellant explained that without a reversal of the Non-Jury Verdict, he may be prevented from pursuing his claim against the estate. ***Id.*** at 6. Finally, Appellant asserted that Judge Lutty's ruling could also be used by unscrupulous married debtors in the future to avoid paying valid debts, thus causing public harm. ***Id.*** at 7.

We agree with Appellant that, even though some or all of the funds which were previously in Pershing's possession may have changed hands, an actual claim or controversy continues to be present in this matter, ***see id.*** at 4; ***Deutsche Bank Nat'l Co.***, ***supra***, and that a reversal of the Non-Jury Verdict "would have significant legal force and effect." ***Id.*** at 6. We discern no intervening change in the facts of this case that would render this appeal moot. ***See In re Gross***, 382 A.2d 116, 119 (Pa. 1978) ("[A] legal question can become moot on appeal as a result of an intervening change in the facts of the case."). We do not believe that the transfer of funds and depletion of assets of the estate by the appellees in this matter are the type of intervening changes in the facts that would render this appeal moot. "[O]ur courts have never held that an adverse party may create mootness through deliberate factual manipulation." ***Jefferson Bank v. Newton Assocs.***, 686 A.2d 834, 838 (Pa. Super. 1996) (noting that the appellant had "taken no action which would divest it of a real interest in the outcome of [the] proceedings, and [the] appellees' unilateral actions to that effect will not result in a finding of mootness").

- 11 -

We first address the issues raised on appeal in the Garnishment Action. Herein, Appellant presents the following questions for our review:

1. Whether [A]ppellant properly exercised his right under Pa.R.C.P. [] 227.4(1)(b) to move the case along instead of waiting for the trial court to dispose of his post-trial motion[?]

2. Whether the trial court committed reversible error when it sustained [McGreevy's] preliminary objections, dissolved the writs of execution directed to Pershing … and BNY Mellon, and declared the entirety of … McGreevy's assets to be "immune and exempt from attachment, levy, and execution[,"] even though the evidence clearly demonstrated that [] McGreevy's single party brokerage/checking account, his decedent/inherited IRA, and his trust account were not exempt or immune from execution[?]

Appellant's Brief I at 4.

We begin by addressing Appellant's first issue, which concerns the timeliness of this appeal. Instantly, Judge Lutty issued a memorandum in lieu of a Rule 1925(a) opinion, in which he asserts that this appeal is untimely, as Appellant had not yet received a decision from the trial court on his post-trial motion. Trial Court Memorandum ("TCM"), 4/9/21, at 2 (unnumbered). Accordingly, he suggests that the appeal be quashed. To the contrary, Appellant argues that he merely exercised his right to move the case along with the filing of a praecipe to enter judgment on the Non-Jury Verdict, pursuant to Rule 227.4(1)(b), and that the appeal is timely. Appellant's Brief I at 17.

We agree with Appellant. Rule 227.4 provides, in pertinent part:

[T]he prothonotary shall, upon praecipe of a party:

- 12 -

> (1) enter judgment upon a nonsuit by the court, the verdict of a jury or the decision of a judge following a trial without jury, if
>
> …
>
> (b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration…[.]

Pa.R.C.P. 227.4(1)(b).

This Court previously established:

> The Rules of Civil Procedure governing post-trial practice were amended to allow the parties to minimize post-trial delay. Pa.R.C.P. 227.1 (Explanatory Comment—1995). Rule 227.4(1)(b) is optional with the parties; they may await the decision of the trial court or move the case along. *Id.* The judgment entered pursuant to Rule 227.4(1)(b), is effective as to all parties and all issues. *Id.* Reconsideration is strictly prohibited and the case is ready in its entirety for the appellate process. *Id.*
>
> In view of the language of Rule 227.4(1)(b) and the explanatory comment, it is clear that once the requisite 120[-]day period runs and a party opts to praecipe for the entry of judgment, the judgment becomes final[] and immediately appealable[] when it is entered on the docket. *See* Pa.R.A.P. 108(b) (date of entry of order in matter subject to Pennsylvania Rules of Civil Procedure is the day clerk makes notation in docket that notice of entry of order has been given pursuant to Pa.R.C.P. 236(b)).

*Conte v. Hahnemann University Hospital*, 707 A.2d 230, 231 (Pa. Super. 1998). Hence, "all that [Rule] 227.4(1)(b) does is to provide an opportunity for a party to the litigation to move the case forward, so that the judgment entered on the verdict is a final, immediately appealable order." *Gibbs v. Herman*, 714 A.2d 432, 434 (Pa. Super. 1998).

Here, Appellant filed his post-trial motion on June 29, 2020. Oral argument was held on October 15, 2020, and briefs were submitted by both parties. As 221 days had elapsed since the filing of his post-trial motion and no decision had been entered by the trial court, we conclude that Appellant properly exercised his right under Rule 227.4(1)(b) to praecipe the court for the entry of a final judgment on the Non-Jury Verdict.[14] Based on the foregoing, we deem the judgment entered on February 4, 2021 to be final and appealable. Thus, we will proceed to review the merits of Appellant's remaining claim.

In his second claim, Appellant asserts that the trial court erred in declaring the entirety of McGreevy's assets to be "immune and exempt from attachment, levy, and execution[,]" and in dissolving the writs of execution directed to Pershing and BNY Mellon. Appellant's Brief I at 23.[15] Appellant claims that the trial court's findings regarding the exemption status of

_____

[14] While we acknowledge that, to some extent, delays in this matter were caused due to court closures related to the COVID-19 pandemic, under the circumstances of this case, such closures did not have any effect on Appellant's exercising his right to move the case along under Rule 227.4(1)(b).

[15] We note that Appellant also avers the trial court erred in sustaining McGreevy's preliminary objections; however, Judge Lutty's Non-Jury Verdict does not expressly sustain McGreevy's preliminary objections. Appellant merely postulates that the trial court accepted McGreevy's arguments and granted his objections, as the order signed by Judge Lutty is identical to the proposed order submitted by McGreevy, along with his proposed findings of fact. *Id.* at 24-25.

McGreevy's assets are contrary to the law and against the weight of the evidence. *Id.* at 17. Additionally, he argues that the Non-Jury Verdict declaring the entirety of McGreevy's assets immune and exempt from execution extends "way beyond the scope of the trial[,]" as the court's findings were supposed to be limited to the status of McGreevy's assets in Pershing's custody at the time Pershing was served with the writ of execution. *Id.* at 16.

Preliminarily, we note:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary. The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Wyatt Inc. v. Citizens Bank of Pennsylvania*, 975 A.2d 557, 564 (Pa. Super. 2009) (citation, brackets, quotation marks, ellipsis, and paragraph break omitted).

Based on our extensive review of the instant matter, we deduce that Judge Lutty agreed with McGreevy's position that all of his assets in Pershing's

possession constituted entireties property.[16]  Moreover, while we do not have the benefit of a Rule 1925(a) opinion, we deem the record to be sufficient as to not impede our appellate review, as the parties have thoroughly briefed the legal issues upon which this matter must be resolved.  ***See Hess v. Fox Rothschild, LLP***, 925 A.2d 798, 805 (Pa. Super. 2007) (declining to remand to the trial court for preparation of an opinion that describes its rationale for the order under appeal for reasons of judicial economy, where the parties have thoroughly argued the legal issues upon which the case must be resolved).  Thus, we delve into the legal arguments presented by the parties.

Instantly, there is no dispute that McGreevy had a legal interest in the following accounts held in Pershing's custody at the time the writ of execution was issued: (1) individual brokerage/checking account; (2) separate share trust; (3) individual IRA; (4) inherited/decedent IRA; and (5) joint brokerage/checking account.  Appellant concedes that the individual IRA and the joint checking account were not subject to execution in a garnishment action; however, he argues that McGreevy's individual checking account, the separate share trust, and the inherited/decedent IRA were subject to attachment.  Appellant's Brief I at 26.  Garnishment Appellees, on the other

---

[16] ***See*** McGreevy's Proposed Findings of Fact and Conclusions of Law, 3/23/20, at 3 ¶ 24 ("All assets and property owned by … McGreevy and in the custody of … Pershing … constitute marital property, *i.e.*[,] tenancies by the entireties, and is therefore exempt and immune from execution, attachment and levy by any judgment creditors of … McGreevy.").  ***See also*** Non-Jury Verdict at 1-2 (unnumbered) (appearing identical to the proposed order attached to McGreevy's Proposed Findings of Fact and Conclusions of Law).

hand, essentially argue that all the foregoing assets were immune and exempt from the reach of McGreevy's creditors because the funds constituted property held as tenants by the entireties. Garnishment Appellees' Brief at 8. For the reasons set forth *infra*, we deem Garnishment Appellees' argument to be wholly without merit.

Preliminarily, we recognize that the accounts at issue have been closed and that the funds are no longer in Pershing's possession. **See** n.14, **supra**. Nevertheless, we deem it necessary to address whether each of these accounts should have been found subject to attachment, because these three accounts were the subject of the non-jury trial which led to Judge Lutty's incredibly broad Order and Non-Jury Verdict declaring all of McGreevy's assets exempt and immune from execution by his creditors and dismissing Appellant's writs of execution. Without reversal of the Non-Jury Verdict, Appellant would be prevented from pursuing collection on his judgment against any assets owned by McGreevy and/or his estate.

It is well-established:

A tenancy by the entireties is a form of co-ownership of real or personal property by husband and wife, with its essential characteristic being that "each spouse is *seised per tout et non per my*, *i.e.*, of the whole or the entirety and not of a share, moiety or divisible part." *In re Gallagher's Estate*, … 43 A.2d 132 ([Pa.] 1945). When one spouse dies, the surviving spouse takes no new estate; rather, the only change is in the properties of the legal entity holding the estate. *Beihl v. Martin*, … 84 A. 953 ([Pa.] 1912). For the duration of the entireties estate, either spouse has the presumptive power to act for both, so long as both spouses share the proceeds, and neither spouse may appropriate property for his or her own use, to the exclusion of the other spouse, without the consent of the other spouse. *Fazekas v. Fazekas*,

> 737 A.2d 1262, 1264 (Pa. Super. 1999). Entireties property is unavailable to satisfy the claims of the creditor of one of the tenants. **Patwardhan v. Brabant**, … 439 A.2d 784[, 785] ([Pa. Super.] 1982). However, a conveyance in fraud of creditors may be appropriately attacked, but the proceedings must conform to proper procedures. **Id.**

**Johnson v. Johnson**, 908 A.2d 290, 295 (Pa. Super. 2006). Further, we recognize that, "in this Commonwealth, a presumption exists that property held by a husband and wife is held by the entireties and that said presumption can be overcome only when the opposing party demonstrates, through clear and convincing evidence, that the property was not intended to be held by the husband and wife as entireties property." **Id.** at 296. We remain mindful of these principles while examining the trial court's determinations regarding the exempt status of each of the three contested accounts.

### 1. Individual Brokerage/Checking Account

Appellant claims the trial court erred in finding McGreevy's individual brokerage/checking account ("checking account") exempt and immune from attachment, levy, and execution, as the account was titled only in McGreevy's name, and McGreevy was the only person who made contributions to and/or used the account. Appellant's Brief I at 28. Contrarily, Garnishment Appellees maintain that the funds in McGreevy's individual checking account constituted tenancy by the entireties property and, thus, were exempt from attachment by McGreevy's creditors. Garnishment Appellees' Brief at 9-10 (citing **In re Holmes' Estate**, 200 A.2d 745, 747 (Pa. 1964) (presuming husbands and wives take property as tenants by the entireties unless there is clear and convincing evidence to the contrary)). Additionally, they baldly assert that

Appellant failed to produce any evidence to support his contention that only McGreevy made contributions to and/or used his individual checking account. *Id.* at 12. Garnishment Appellees' claims are belied by the record and are wholly without merit.

First, Garnishment Appellees correctly note that the judgment assigned to Appellant was "strictly and exclusively a judgment entered against … McGreevy alone[,]" *id.* at 10, and that despite claims McGreevy and Wife had separated in 2007, *see* Appellant's Brief I at 33, the two remained legally married until McGreevy's death in January of 2021.[17] *See Seese*, 611 A.2d at 1243 ("It is well settled that Pennsylvania subscribes to the majority view which holds that entireties property is unavailable to satisfy the claims of the creditor of only one of the tenants."). However, their argument fails to recognize that the checking account was opened in McGreevy's name *only* and that Wife had no authority to use the account. *See* N.T. Trial, 3/2/20, at 24 (Robert Feldman's testifying that Wife was not a signatory on the account and that she had no authority to write checks on the account or to transfer money from the account). In fact, all the cases cited by Garnishment Appellees in

_____

[17] Our review of the record reveals that no divorce action was ever instituted by either party, nor did McGreevy and Wife ever enter into a formal separation agreement. *Id.* at 10-11. Yet, Wife did acknowledge that she and McGreevy separated in 2007. N.T. Deposition of Wife, 2/5/19, at 7. *See also* N.T. Deposition of McGreevy, 2/5/19, at 5 (McGreevy's explaining that he and Wife are "still married" but separated "[a]pproximately 10, 11 years ago[,]" and that he still communicates with her on a regular basis and relies on her to help keep him organized with day-to-day business).

- 19 -

support of their argument that McGreevy's individual checking account constituted entireties property are distinguishable from the instant matter, as those cases involve property titled to both a husband and wife. **See** Garnishment Appellees' Brief at 9-10 (citing **In re Holmes Estate**, 200 A.2d at 747 ("Where property or an account is placed in the names of a husband *and wife*, a gift and the creation of an estate by the entireties is presumed even though the funds used to acquire the property or to establish the account were exclusively those of the husband. The placing of the property in *both* names, without more, creates an estate by the entireties.") (internal citations omitted; emphasis added); **In re Barsotti**, 7 B.R. 205, 207 (Bankr. W.D. Pa. 1980) (describing the creation and nature of tenancy by the entireties property where a conveyance is made to husband *and wife*)).

After careful review, we detect no competent evidence in the record to support the trial court's conclusion that this account constituted entireties property. Rather, the record establishes that McGreevy opened the checking account in his name only, utilizing his individual funds, and that only McGreevy contributed to and withdrew from the account. Appellant produced a copy of McGreevy's Corestone Account Application ("Application"), which designated the account title as "Daniel M. McGreevy" and contained only McGreevy's signature as account owner, along with a copy of the Account Transfer Form ("Transfer Form"), which directed Merrill Lynch to transfer all of McGreevy's assets in his individual account with Merrill Lynch to his checking account at Pershing. **See** Appellant's Evidence, 9/6/19, at Exhibit 7 (Application); **id.** at

Exhibit 7 (Transfer Form). Step 7 of the Application required the signature of "*all* account owner(s), authorized persons and additional signatorie(s)[,]" and contained only McGreevy's signature. Application at 3 (emphasis added). Wife did not sign the Application as a joint owner or additional signatory. ***Id.*** Moreover, the Transfer Form specified the receiving account as a single party account and was signed only by McGreevy as the "primary account holder." Transfer Form at 1, 3. The space for the signature of a secondary account holder remained blank. ***Id.*** at 3.

Given the documentation in the record establishing that the checking account was an individual account titled in McGreevy's name only, and Garnishment Appellees' failure to produce any evidence to the contrary, we determine there is no presumption that McGreevy's opening of the account created an estate by the entireties. ***See Fratangelo v. Fratangelo***, 520 A.2d 1195, 1201 (Pa. Super. 1987) (noting the creation of entireties property requires that the property be acquired in joint names of husband and wife). ***See also Constitution Bank v. Olson***, 620 A.2d 1146, 1149 (Pa. Super. 1993) ("[T]he legal unity of time, title, interest, possession and marriage create a tenancy by the entireties[.]").[18] It is clear that Wife was not a

_____

[18] As we explained in ***In re Estate of Rivera***, 194 A.3d 579 (Pa. Super. 2018),

> [a] tenancy by the entireties requires a legally binding marriage plus the satisfaction of all four unities, which are further defined below:

*(Footnote Continued Next Page)*

signatory on the account and had no authority to withdraw funds from the account; thus, we determine that none of the four unities have been satisfied with respect to McGreevy's individual checking account.[19]

Finally, we acknowledge that where a spouse's individual funds are commingled in a joint checking account held by both husband and wife or used to purchase property in the name of husband and wife, the presumption of a

---

> Unity of time requires that the interests of the tenants vest at the same time. Unity of title requires the tenants to have obtained their title by the same instrument. … Unity of possession requires the tenants to have an undivided interest in the whole estate. … Unity of interest requires the tenants to have estates in the property of the same type, duration and amount.

*Id.* at 586 (quoting **Fenderson v. Fenderson**, 685 A.2d 600, 607 (Pa. Super. 1996) (internal citations and quotations omitted)). "If one of the unities is lacking, then, by common law, there can be no joint tenancy or entirety." **Madden v. Gosztonyi Savings & Trust Co.**, 200 A. 624, 631 (Pa. 1938).

[19] Even if there was a presumption of entireties, the record contains evidence of McGreevy's intention to create ownership other than as tenants by the entireties, which would be sufficient to rebut the presumption. **See Constitution Bank**, 620 A.2d at 1152 n.3 ("Intention is the cardinal and controlling element in determining if a husband and wife shall take ownership of property by the entireties, and if such … sufficiently appears, it will be given effect."). Here, in addition to the overwhelming evidence contained within the account documents reflecting McGreevy's intention to open an individual checking account solely for his use, the fact that McGreevy and Wife opened a joint checking account with Pershing around the same time as McGreevy's individual checking account further supports Appellant's argument that McGreevy clearly did not intend for his individual checking account to be entireties property. **See** Appellant's Brief I at 38-39.

gift and creation of an estate by the entireties arises.[20] Such a presumption does not arise here, however, as Garnishment Appellees have failed to produce any evidence whatsoever of commingling of the funds. We emphasize that the mere existence of a marriage does not render all property owned by either spouse tenancy by the entireties property. **See In re Estate of Rivera**, 194 A.3d at 586 (indicating Pennsylvania jurisprudence has not adopted a *de facto* tenancy by entireties).

## 2. Separate Share Trust

Next, we consider Appellant's claim that the trial court erred in finding McGreevy's separate share trust exempt and immune from attachment by his creditors. **See** Appellant's Brief I at 42-43. It is undisputed that the trust, formally titled as the "Daniel M. McGreevy Generation Skipping Tax Exempt Trust," was an irrevocable trust that was established by McGreevy's deceased father's will and trust agreement, dated July 9, 2008. **See** Appellant's Evidence at Exhibit 8 (Trust Account Documents); McGreevy's Evidence, 7/16/19, at Exhibit B (Affidavit of Robert E. Feldman, 3/28/19, at 1-2) (unnumbered). McGreevy was the sole beneficiary and the sole trustee of the trust. **See** Trust Account Documents; N.T. Deposition of Robert Feldman at 29.

---

[20] **See Constitution Bank**, 620 A.2d at 1150 (quoting **In re Holmes' Estate**, 200 A.2d at 747 ) ("Where property or an account is placed in the names of a husband and wife, a gift and the creation of an estate by the entireties is presumed even though the funds used to acquire the property or to establish the account were exclusively those of the husband. The placing of the property in both names, without more, creates an estate by the entireties.").

Garnishment Appellees claim that the separate share trust was entireties property and was therefore exempt from attachment by Appellant. *See* Garnishment Appellees' Brief at 8 (asserting generally that "all property of … McGreevy constituted entireties property"). This claim is meritless, as the record clearly establishes that McGreevy was the sole beneficiary and sole trustee of the separate share trust created by his deceased father. *See* Trust Account Documents (containing only McGreevy's signature). Wife has failed to provide any evidence that she was vested an interest in the trust at the same time and by the same document as McGreevy. *See Madden*, 200 A. at 631 (declaring that if even one of the unities is lacking, there can be no entirety); *Constitution Bank*, 620 A.2d at 1149 (recognizing that the legal unity of time, title, interest, and possession are required to create a tenancy by the entireties).

Alternatively, Garnishment Appellees claim the trust funds could not be reached by McGreevy's creditors pursuant to 20 Pa.C.S. § 7745, which provides that "[a] judgment creditor or assignee of *the settlor* of an irrevocable trust may reach the maximum amount that can be distributed to or for the settlor's benefit." Garnishment Appellees' Brief at 19 (quoting 20 Pa.C.S. § 7745(2) (emphasis added)). Garnishment Appellees' argument that the trust funds were exempt from execution by McGreevy's creditors because McGreevy was the beneficiary, not the settlor, of the trust is seemingly based on their interpretation of section 7745(2) to mean that creditors can *only* reach the assets of an irrevocable trust if the claims are against the settlor.

We deem this argument to be faulty and their reliance on section 7745 to be misplaced, as section 7745 only governs creditor's claims *against settlors*. *See* 20 Pa.C.S. § 7745.

As Appellant notes, Pennsylvania's Uniform Trust Act, 20 Pa.C.S. §§ 7701-7799.3 ("PUTA"), provides numerous situations where a judgment creditor of a trust beneficiary can reach the assets of the trust. For instance, section 7741, which pertains to the rights of a *beneficiary's* creditor, provides: "A judgment creditor or assignee of the beneficiary may reach the beneficiary's interest by attachment of present or future distributions to or for the benefit of the beneficiary or other means to the extent the beneficiary's interest is not subject to a spendthrift provision." 20 Pa.C.S. § 7741.[21]

---

[21] The legislature explained:

> This section applies only if the trust does not contain a spendthrift provision…. Absent a valid spendthrift provision, a creditor may ordinarily reach the interest of a beneficiary the same as any other of the beneficiary's assets. This does not necessarily mean that the creditor can collect all distributions made to the beneficiary. The interest may be too indefinite or contingent for the creditor to reach or the interest may qualify for an exemption under the state's general creditor exemption statutes. *See* [Restatement] (Third) of Trusts § 56 (2003); Restatement (Second) of Trusts §§ 147-149, 162 (1959). Other creditor law of the State may limit the creditor to a specified percentage of a distribution. This section does not prescribe the procedures ("other means") for reaching a beneficiary's interest or of priority among claimants, leaving those issues to the enacting State's laws on creditor rights. This section does clarify, however, that an order obtained against the trustee, whatever state procedure may have been used, may

*(Footnote Continued Next Page)*

Additionally, section 7748 states: "Trust property that is subject to a power of withdrawal, during the period the power may be exercised and after its lapse, release or waiver, may be reached by a creditor or an assignee of the holder of the power whether or not the interest of the holder in the trust is subject to a spendthrift provision." 20 Pa.C.S. § 7748.

Accordingly, we conclude the trial court's determination regarding the exemption status of the separate share trust is not supported by competent evidence in the record and that the trial court erred in its application of the law. *See Wyatt Inc.*, *supra*.

### 3. Inherited/Decedent IRA

Finally, we address the trial court's finding regarding McGreevy's inherited/decedent IRA ("inherited IRA"). The inherited IRA was funded by proceeds of an IRA owned by McGreevy's late father. McGreevy was the named beneficiary on his father's IRA. McGreevy's financial advisor, Robert Feldman, established the inherited IRA account for the purpose of enabling McGreevy to receive minimum annual distributions over the expectancy of his life, thereby minimizing his tax liability. *See* N.T. Deposition of Robert Feldman at 13-14. Garnishee Appellees claim that the inherited IRA was a retirement account, which was immune and exempt from execution, pursuant

---

extend to future distributions whether made directly to the beneficiary or to others for the beneficiary's benefit….

20 Pa.C.S. § 7748, Uniform Law Comment (some citations omitted).

to 42 Pa.C.S. § 8124(b)(1)(ix). Garnishees' Appellees' Brief at 14, 16. Contrarily, Appellant contends that such an IRA does not constitute retirement funds and, therefore, he concludes that the trial court erred in finding the funds exempt or immune from attachment by a judgment creditor. Appellant's Brief I at 42.

Pennsylvania law protects retirement funds and accounts from attachment or execution by judgment creditors. *See* 42 Pa.C.S. § 8124(b) (enumerating the types of retirement funds and accounts that shall be exempt from attachment or execution on a judgment). However, no courts in this Commonwealth have discussed whether the statute covers inherited IRAs. Thus, whether an inherited IRA is considered a retirement account for the purpose of attachment involves a question of statutory interpretation. When considering issues of statutory interpretation, the applicable standard of review is *de novo* and our scope of review is plenary. ***Trout v. Strube***, 97 A.3d 387, 389 (Pa. Super. 2014) (citation omitted). As we have explained:

> When we undertake statutory interpretation, our object is to ascertain and then effectuate the intention of the Legislature. 1 Pa.C.S.[] § 1921(a). When possible, this Court construes every statute so as to give effect to all of its provisions. If the terms of a statute are clear and free of all ambiguity, we will not disregard the letter of the law in favor of pursuing its apparent spirit. However, when the words of a statute are not explicit, this Court must determine what it was that the General Assembly intended. We then apply the legislators' intent when interpreting the law in question.

*Id.* at 389-90 (citation omitted).

The statutory provision in question here is subsection 8124(b)(1)(ix),

which exempts the following from attachment or execution on a judgment:

> Any retirement or annuity fund provided for under section 401(a), 403(a) and (b), 408, 408A, 409[,] or 530 of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 401(a), 403(a) and (b), 408, 408A, 409[,] or 530), the appreciation thereon, the income therefrom, the benefits or annuity payable thereunder and transfers and rollovers between such funds.

42 Pa.C.S. § 8124(b)(1)(ix).[22]  Although "[t]he statute's plain language

generally provides the best indication of legislative intent[,] where … the

statutory language at issue is determined to be ambiguous[,] we may go

beyond the text and look to other considerations to discern legislative intent."

***Harmon v. Unemployment Compensation Board of Review***, 207 A.3d

292, 304 (Pa. 2019) (internal quotation marks and citations omitted).  "Such

considerations include, *inter alia*, the occasion and necessity for the statute,

---

[22] Subsection 8124(b)(1)(ix) shall not apply to:

(A)  Amounts contributed by the debtor to the retirement or annuity fund within one year before the debtor filed for bankruptcy.  This shall not include amounts directly rolled over from other funds which are exempt from attachment under this subparagraph.

(B)  Amounts contributed by the debtor to the retirement or annuity fund in excess of $15,000 within a one-year period. This shall not include amounts directly rolled over from other funds which are exempt from attachment under this subparagraph.

(C)  Amounts deemed to be fraudulent conveyances.

42 Pa.C.S. § 8124(b)(1)(ix)(A)-(C).

the mischief to be remedied, the consequences of a particular interpretation, and the contemporaneous legislative history." ***Id.*** (citation omitted).

Instantly, section 8124(b)(1)(ix) is ambiguous as to whether the term "retirement fund" includes an inherited IRA. ***See Burke ex rel. Burke v. Independence Blue Cross***, 103 A.3d 1267, 1273 (Pa. 2014) ("An ambiguity exists when there are at least two reasonable interpretations of the specific text under review."). Thus, we look first to the relevant section of the Internal Revenue Code, section 408, which is referenced in the foregoing statutory provision and governs the taxability of distributions from an IRA. ***See*** 26 U.S.C. § 408. Section 408(a) defines an IRA as "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries," subject to certain requirements enumerated in the statute. 26 U.S.C. § 408(a). An inherited IRA is defined under the Internal Revenue Code as "an individual retirement account or individual retirement annuity" that a beneficiary acquired "by reason of the death of another individual, and such [beneficiary] was not the surviving spouse of such other individual." 26 U.S.C. § 408(d)(3)(C)(ii).

Additionally, we observe that similar to the Pennsylvania Consolidated Statutes which exempt certain property from attachment or execution on a judgment, ***see*** 42 Pa.C.S. § 8124, the Bankruptcy Code allows a debtor to

exempt certain property from the bankruptcy estate.[23]  Specifically, section 522(b) provides that, unless a state has statutorily "opted out" and thereby foreclosed the use of federal exemptions, a debtor may choose between the federal exemptions listed in section 522(d) and state law exemptions to exempt property from the bankruptcy estate.  ***See*** 11 U.S.C. § 522(b).  ***See also Ambrosia***, 572 A.2d at 779 ("Under the federal construct, a debtor must choose between these two alternatives; he or she is not permitted to take certain exemptions which are allowed by the state and other exemptions which are prescribed by § 522(d).").  Pennsylvania has not enacted "opt out" legislation.  ***Id.***

Under section 522 of the Bankruptcy Code, an individual debtor is authorized to exempt from his bankruptcy estate "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."  11 U.S.C. §§ 522(b)(3)(C), 522(d)(12).  The term "retirement funds" is not defined by the Bankruptcy Code, and a split developed in the federal appellate courts as to whether funds in an inherited IRA qualify for the section 522 exemption.  ***See In re Clark***, 714 F.3d 559, 562 (7th Cir. 2013) (determining "inherited IRAs represent an opportunity for current consumption, not a fund of retirement savings" and, therefore, do not

---

[23] Under the Bankruptcy Code, when a debtor files for bankruptcy, "all legal and equitable property interests of the debtor at that time are included as part of the debtor's bankruptcy estate." ***Ambrosia v. Yerage***, 572 A.2d 777, 779 (Pa. Super. 1990) (citing 11 U.S.C. § 541).

qualify for the exemption under section 522); *In re Chilton*, 674 F.3d 486, 489 (5th Cir. 2012) (deciding inherited IRAs are exempt from the bankruptcy estate under section 522(d)(12), as they constitute funds that others had originally set aside for their retirement and that the transfer of these retirement funds to the debtor does not alter their status as retirement funds).

Upon a grant of *certiorari*, the Supreme Court of the United States heard the *In re Clark* debtor-beneficiary's appeal and affirmed the Seventh Circuit's decision, ruling that inherited IRAs are not included in the definition of "retirement funds" under section 522(b)(3)(C) of the Bankruptcy Code. *Clark v. Rameker*, 573 U.S. 122 (2014). To begin its analysis, the *Clark* Court defined "retirement funds" as "sums of money set aside for the day an individual stops working[,]" since the term is not defined by the Bankruptcy Code. *Id.* at 127 (citing American Heritage Dictionary 712, 1489 (4th ed. 2000) (stating the ordinary meaning of "funds" and "retirement")). To determine whether funds in an account qualify as "retirement funds," the *Clark* Court dictated that "courts should not engage in a case-by-case, fact-intensive examination into whether the debtor actually planned to use the funds for retirement purposes as opposed to current consumption. Instead, we look to the legal characteristics of the account in which the funds are held, asking whether, as an objective matter, the account is one set aside for the day when an individual stops working." *Id.*

The **Clark** Court concluded that funds held in inherited IRAs are *not* objectively set aside for the purpose of retirement, based on the following three legal characteristics of such accounts.

First, the holder of an inherited IRA may never invest additional money in the account. 26 U.S.C. § 219(d)(4). Inherited IRAs are thus unlike traditional and Roth IRAs, both of which are quintessential "retirement funds." For where inherited IRAs categorically prohibit contributions, the entire purpose of traditional and Roth IRAs is to provide tax incentives for accountholders to contribute regularly and over time to their retirement savings.

Second, holders of inherited IRAs are required to withdraw money from such accounts, no matter how many years they may be from retirement. Under the [Internal Revenue] Code, the beneficiary of an inherited IRA must either withdraw all of the funds in the IRA within five years after the year of the owner's death or take minimum annual distributions every year. **See** § 408(a)(6); § 401(a)(9)(B); 26 CFR § 1.408-8 (Q-1 and A-1(a) incorporating § 1.401(a)(9)-3 (Q-1 and A-1(a)))….

Finally, the holder of an inherited IRA may withdraw the entire balance of the account at any time—and for any purpose—without penalty. Whereas a withdrawal from a traditional or Roth IRA prior to the age of 59½ triggers a 10 percent tax penalty subject to narrow exceptions, … a rule that encourages individuals to leave such funds untouched until retirement age[,] there is no similar limit on the holder of an inherited IRA. Funds held in inherited IRAs accordingly constitute "a pot of money that can be freely used for current consumption," [**In re Clark**,] 714 F.3d at 561, not funds objectively set aside for one's retirement.

**Id.** at 128.

Moreover, the **Clark** Court opined:

Our reading of the text is consistent with the purpose of the Bankruptcy Code's exemption provisions. As a general matter, those provisions effectuate a careful balance between the interests of creditors and debtors. On the one hand, we have noted that "every asset the Code permits a debtor to withdraw

from the estate is an asset that is not available to … creditors." **Schwab v. Reilly**, 560 U.S. 770, 791 … (2010). On the other hand, exemptions serve the important purpose of "protect[ing] the debtor's essential needs." **United States v. Security Industrial Bank**, 459 U.S. 70, 83 … (1982) (Blackmun, J., concurring in judgment).[3]

> [3] As the House Judiciary Committee explained in the process of enacting § 522, "[t]he historical purpose" of bankruptcy exemptions has been to provide a debtor "with the basic necessities of life" so that she "will not be left destitute and a public charge." H.R.Rep.No. 95-595, p. 126 (1977).

Allowing debtors to protect funds held in traditional and Roth IRAs comports with this purpose by helping to ensure that debtors will be able to meet their basic needs during their retirement years. At the same time, the legal limitations on traditional and Roth IRAs ensure that debtors who hold such accounts (but who have not yet reached retirement age) do not enjoy a cash windfall by virtue of the exemption—such debtors are instead required to wait until age 59½ before they may withdraw the funds penalty-free.

The same cannot be said of an inherited IRA. For if an individual is allowed to exempt an inherited IRA from her bankruptcy estate, nothing about the inherited IRA's legal characteristics would prevent (or even discourage) the individual from using the entire balance of the account on a vacation home or sports car immediately after her bankruptcy proceedings are complete. Allowing that kind of exemption would convert the Bankruptcy Code's purposes of preserving debtors' ability to meet their basic needs and ensuring that they have a "fresh start" into a "free pass[."] We decline to read the retirement funds provision in that manner.

**Id.** at 129-30 (some internal citations omitted). Based on its foregoing analysis, the Court determined "[t]he text and purpose of the Bankruptcy Code make clear that funds held in inherited IRAs are not 'retirement funds' within the meaning of § 522(b)(3)(C)'s bankruptcy exemption." **Id.** at 127.

Instantly, Appellant relies on the holding in **Clark** in support of his argument that McGreevy's inherited IRA did not constitute retirement funds

and, thus, it was not exempt or immune from attachment by a judgment creditor. Appellant's Brief I at 41-42. Garnishment Appellees simply aver that **Clark** does not apply here, because this matter does not involve a debtor in a bankruptcy proceeding. Garnishment Appellees' Brief at 16.

While Garnishment Appellees are correct in stating the underlying matter here is not a bankruptcy proceeding, we agree with Appellant that **Clark** is controlling. The very purpose of the exemptions under the federal Bankruptcy Code, which is "to provide a debtor with the basic necessities of life so that she will not be left destitute and a public charge[,]" **Clark** at 129 n.3 (internal quotation marks and citation omitted), is also served by this Commonwealth's analogous exemptions under section 8124, which are likewise intended to protect an individual's retirement income from execution by creditors. **See In re Barshak**, 106 F.3d 501, 504 (3d. Cir. 1997) (citing **In re Houck**, 181 B.R. 187, 193 (Bankr. E.D.Pa. 1995) ("The Pennsylvania legislature has made a policy decision that, for purposes of state law, IRAs should be insulated from involuntary alienation via a creditor's execution.")). Moreover, subsection 8124(b)(1)(ix) contains substantially similar language to the statutory bankruptcy exemption under section 522(b). Hence, we apply the **Clark** Court's logic to the instant matter and conclude that McGreevy's inherited IRA did not qualify for an exemption under section 8124.

Finally, we address Appellant's claim that the Non-Jury Verdict extends beyond the scope of the Garnishment Action. Appellant is correct in stating that the issue presented at trial was limited to whether certain assets owned

by McGreevy and in the possession of Pershing—namely, McGreevy's individual checking account, the separate share trust, and the inherited IRA— were subject to execution. **See** Appellant's Brief I at 25 (citing TCM at 1 (acknowledging the issue before the court "is whether *certain property* owned by [McGreevy] was subject to execution in order to pay a judgment held by [Appellant]") (unnumbered; emphasis added)). **See also** Trial Court Order, 9/26/19 (single page) ("The issue of whether the assets *in the custody of Pershing* … are subject to execution or conversely, immune and exempt from execution shall be determined after a non-jury trial scheduled for January 15, 2020….") (emphasis added). Nonetheless, the Non-Jury Verdict declared "*all property* held by [McGreevy], or established for the benefit of [McGreevy] or otherwise associated with [McGreevy], including all accounts in the custody of Pershing" to be immune and exempt from attachment, levy and execution. Non-Jury Verdict at 1-2 (unnumbered; emphasis added). We deem the trial court's declaration of all property being immune from attachment to be in error, as the order goes well beyond the scope of the relief sought by Appellant and the procedural posture of this case.

In sum, we do not discern any competent evidence in the record to support Judge Lutty's conclusion that McGreevy's individual checking account, separate share trust, and inherited IRA, let alone *all* of his assets, are immune and exempt from attachment, levy, and execution by creditors. We deem such findings to be based on a misapplication of the law. The Non-Jury Verdict

must be reversed, so as not to impede Appellant's pursuit of his PUVTA claim, as well as his pending judgment claim against McGreevy's estate.

Accordingly, we vacate the judgment entered on February 4, 2021, at docket no. 269 WDA 2021, and remand this matter with instructions for the trial court to enter a verdict consistent with this opinion and to reinstate the January 23 and February 27, 2019 writs of execution to the extent that Garnishees may still have any assets of McGreevy and/or his estate in their possession.

## **Appeal from PUVTA Action**

Next, we address the issues raised on appeal in Appellant's PUVTA Action. Appellant presents the following questions for our review:

A. Whether the trial court committed reversible error when it sustained PUVTA Appellees' preliminary objection no. 1 and dismissed the entire complaint as to … McGreevy, individually, and … McGreevy, as trustee for the Daniel M. McGreevy Separate Share Trust, even though the death of … McGreevy deprived the trial court of subject matter jurisdiction over litigation by or against the deceased because the proper parties were never substituted?

B. Whether the trial court committed reversible error when it sustained PUVTA Appellees' preliminary objection[] no. 1, dismissed the entire complaint, and held that Allegheny County Court of Common Pleas Judge Paul F. Lutty[,] Jr.'s June 23, 2020 [N]on-[J]ury [V]erdict was issue preclusive and collaterally estopped Appellant from litigating his civil complaint, even though the judgment on the [N]on[-J]ury [V]erdict was not final for purposes of collateral estoppel, the issues and/or claims involved in the prior action were not identical, Appellant did not have full and fair opportunity to litigate the exempt status of assets not within the scope of the prior action, and/or finding in the [N]on[-J]ury [V]erdict fell

within one or more of the exceptions to collateral estoppel, law of the case, *lis pendens*, or the coordinate jurisdiction rule[?]

C. Whether the trial court erred as a matter of law in sustaining PUVTA Appellees' preliminary objection [no.] 1 and dismissing the entire complaint, because even if the issue regarding the exempt status of some or all of … McGreevy's assets was collaterally estopped, the complaint in civil action should more properly have been either stayed altogether pending the outcome of the appeal in the prior litigation, [or] stayed as to assets within the scope of the previous action pending the outcome of the appeal in the prior litigation and allowed to proceed as to the transfer of … McGreevy's assets that were not within the scope of the trial[?]

Appellant's Brief ("Appellant's Brief II"), 5/10/21, at 3-5.

To reiterate, PUVTA Appellees filed preliminary objections to Appellant's complaint, alleging, *inter alia*, that the trial court lacked subject matter jurisdiction because the entirety of McGreevy's assets were found to be exempt from attachment. Appellant filed preliminary objections to PUVTA Appellees' preliminary objections on December 15, 2020. On January 17, 2021, McGreevy died. A notice of death was filed in the Warren County Court of Common Pleas on February 17, 2021, pursuant to Pa.R.C.P. 2355; however, no substitution of party was filed on behalf of McGreevy in his individual capacity or as trustee for the separate share trust. Regardless, after hearing argument on the parties' preliminary objections on February 17, 2021, the trial court issued an order that same day sustaining PUVTA Appellees' preliminary objection regarding lack of subject matter jurisdiction and dismissing Appellant's complaint without prejudice.

Appellant argues that the trial court did not have authority to rule on PUVTA Appellees' preliminary objections to the complaint, because

McGreevy's death deprived the trial court of subject matter jurisdiction over claims brought by or against him. Appellant's Brief II at 11. He avers that "[u]ntil a proper party is substituted for [] McGreevy individually, and a successor trustee is substituted for … McGreevy, as trustee for the Daniel M. McGreevy Separate Share Trust, any rulings in favor of or against those parties are null and void." ***Id.***[24] We agree.

It is clear that "the death of a party deprives the trial court of subject matter jurisdiction over litigation by or against the deceased until such time as the deceased's personal representative is substituted in his or her place." ***Grimm v. Grimm***, 149 A.3d 77, 84 (Pa. Super. 2016). As we explained in ***Grimm***, "Pennsylvania Rule of Civil Procedure 2355 provides that, 'if a named party dies after the commencement of an action, the attorney of record for the deceased party ***shall*** file a notice of death with the prothonotary. The procedure to substitute the personal representative of the deceased party shall be in accordance with Rule 2352.'" ***Id.*** (quoting Pa.R.C.P. 2355(a) (emphasis added)).[25] Thus, "under Rules 2352 and 2355, the filing of a notice

---

[24] We acknowledge that Appellant failed to include this issue in his Rule 1925(b) concise statement; however, a challenge to subject matter jurisdiction cannot be waived. ***Commonwealth v. Jones***, 929 A.2d 205, 210 (Pa. 2007). Moreover, it is well-settled that this Court may raise the question of subject matter jurisdiction *sua sponte*. ***Barndt v. Barndt***, 580 A.2d 320 (Pa. Super. 1990).

[25] Rule 2352 provides:

*(Footnote Continued Next Page)*

of death **and** the substitution of a personal representative is mandatory." **Id.** (emphasis added).

Moreover, this Commonwealth "has long recognized that a trial court lacks subject matter jurisdiction over a claim filed against a deceased party." **Id.** (citing **Thompson v. Peck**, 181 A. 597, 598 (Pa. 1935) (declaring a suit filed against a deceased individual "void"); **Valentin v. Cartegena**, 544 A.2d 1028, 1029 (Pa. Super. 1988) (deeming a suit filed against a deceased individual a "nullity")). "A dead man cannot be a party to an action, and any such attempted proceeding is completely void and of no effect." **Id.** at 84-85 (quoting **Lange v. Burd**, 800 A.2d 336, 341 (Pa. Super. 2002) (citation omitted)). Based on the foregoing, we conclude that the trial court did not have the authority to enter the order sustaining PUVTA Appellees' preliminary objection and dismissing Appellant's complaint.[26]

_____

    (a)    The successor may become a party to a pending action by filing of record a statement of the material facts on which the right to substitution is based.

    (b)    If the successor does not voluntarily become a party, the prothonotary, upon praecipe of an adverse party setting forth the material facts shall enter a rule upon the successor to show cause why the successor should not be substituted as a party.

Pa.R.C.P. 2352.

[26] It is well-established:

    Before a court may issue an order, it must have authority to act. **Mintz v. Mintz**, [1924 WL 3939, at *1 (Pa. Super. January 1, 1924)]. Jurisdiction over the subject matter is fundamental to a

*(Footnote Continued Next Page)*

Accordingly, we vacate the February 18, 2021 order entered at docket no. 286 WDA 2021 and remand this matter to the trial court to permit substitution of a personal representative for McGreevy, in accordance with the Pennsylvania Rules of Civil Procedure.

Based on our disposition of Appellant's first issue, we need not address the remainder of Appellant's claims raised on appeal regarding the PUVTA Action.

Judgment vacated at docket no. 269 WDA 2021. Order vacated at docket no. 286 WDA 2021. Cases remanded. Jurisdiction relinquished.

---

court's authority to act. ***Leveto v. Nat'l Fuel Gas Dist. Corp.***, … 366 A.2d 270 ([Pa. Super.] 1976).

> Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law. It is the right to adjudicate concerning the subject matter in a given case…. Without such jurisdiction, there is no authority to give judgment and one so entered is without force or effect.

***Mintz*** …, ***supra*** [at *1].

***Rieser v. Glukowsky***, 646 A.2d 1221, 1223 (Pa. Super. 1994).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2022